WYC:CAC
F# 2009R01074

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ABDUL WAHID,
    also known as
    "Maliem Hatakay,"

        Defendant.

- - - - - - - - - - - - - - - - -X

M-10-039

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION FOR
ARREST WARRANT

(T. 18, U.S.C. § 1347)

EASTERN DISTRICT OF NEW YORK, SS:

    L. M. CAULFIELD, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    Upon information and belief, in or about and between February 2007 and August 2008, both dates being approximate and inclusive, within the Eastern District of New York, the defendant ABDUL WAHID, also known as "Maliem Hatakay," together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, to wit: Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicaid,

2

in connection with the delivery of and payment for health care benefits, items, and services.

(Title 18, United States Code, Section 1347)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the FBI and have been so since April 2008. I am assigned in the New York Field Office to Squad C-33, which investigates health care fraud. I am familiar with the facts and circumstances set forth below from my conversations with other law enforcement agents, my review of the investigative file and from reviewing reports by other law enforcement officers involved in the investigation.

## BACKGROUND

2. Through my work investigating health care fraud cases, I have learned that Medicaid is a medical assistance program that pays the medical expenses and prescription drug costs of qualifying individuals and families with low income and a lack of financial resources. Medicaid is jointly funded by the federal, state and local governments, and is administered by the states.

3. The Office of Medicaid Management, New York State Department of Health, administers the Medicaid program in New York State. In order to obtain Medicaid assistance in New York

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

State, individuals and their families are required to apply through their local Departments of Social Services. For the five boroughs of New York City, the local department of Social Services is the Human Resources Administration ("HRA"), which is an agency of the City of New York. HRA's Medical Assistance Program ("HRA-MAP") determines the eligibility of New York City residents who apply to the Medicaid program. HRA-MAP bases its eligibility determinations on various factors, including the amount of an applicant's income, living expenses and outstanding medical bills; whether the applicant lives within New York City; and whether the applicant is pregnant, blind or disabled.

4. New York City residents or their representatives can apply for Medicaid by submitting a completed and signed application form at an HRA-MAP office or through a health plan that serves as a "facilitated enroller" for the New York State Department of Health. First-time applicants for Medicaid are required to supplement their application with relevant documentation, such as a birth certificate, recent paycheck stubs or other proof of income, and proof of residence. Applicants determined to be eligible for Medicaid receive a Medicaid card, which is to be used when obtaining medical services.

## THE INVESTIGATION

5. From a review of consensual recordings of a cooperating witness acting in an undercover capacity under the direction of law enforcement (the "CW"),[2/] as well as a review of the records in this case, I have learned, in substance and in part, the following:

6. On or about April 17, 2007, the CW had a consensually-recorded telephone conversation with the defendant WAHID in which the CW requested a Medicaid card for a friend ("Beneficiary #1")[3/]. WAHID did not ask for, and the CW did not provide, any information about Beneficiary #1's eligibility for a Medicaid card. WAHID only told the CW that he would need a passport or proof of citizenship and proof of address, such as a bill. WAHID further told the CW that it would cost approximately $250.00 for him to obtain the Medicaid card.

7. On or about April 26, 2007, the CW met with WAHID in Queens, New York. At the meeting, which was consensually recorded, the CW gave WAHID $300.00 and a copy of a United States passport in the name of Beneficiary #1. WAHID told the CW that he also needed a social security number and a piece of mail from Beneficiary #1 in order to obtain the Medicaid card. WAHID did

---

[2/] The CW pled guilty in this District, pursuant to a cooperation agreement, to Conspiracy to Commit Mail Fraud and Health Care Fraud in violation of Title 18, United States Code, Sections 1341, 1346 and 1347.

[3/] The beneficiaries in this complaint were either fictitious individuals or individuals cooperating with law enforcement pursuant to a cooperation agreement with this District.

not request any information about Beneficiary #1's income, living expenses or outstanding medical bills.

8. On or about May 9, 2007, the CW gave WAHID an envelope containing a copy of Beneficiary #1's passport and social security card. WAHID explained that it would take approximately one month to produce the Medicaid card for Beneficiary #1.

9. On or about May 16, 2007, the CW showed WAHID a copy of an envelope and a flyer from New York Presbyterian Community Health Plan that was sent to Beneficiary #1. WAHID told the CW that the individual listed on the flyer as the sender ("Co-Conspirator #1") worked for "the City" and was WAHID's contact to obtain the Medicaid cards. WAHID explained that the flyer was sent to Beneficiary #1 to establish proof of address.

10. On or about May 26, 2007, a completed Medicaid application was submitted to HRA in the name of Beneficiary #1. This application included false information about Beneficiary #1's income, such as the fact that Beneficiary #1 was supported by a brother who provided free room and food. This application was not completed or submitted by the CW, and none of the information therein was provided to WAHID by the CW. The application also included a "Declaration of No Income" form, on which Beneficiary #1's signature was forged. A signature of Beneficiary #1's fictitious brother was also forged.

11. On or about September 21, 2007, a Medicaid card in

the name of Beneficiary #1 was mailed to an address in Queens, New York that was provided to WAHID by the CW.

12. On or about October 22, 2007, the CW met WAHID in Queens, New York and paid him $400.00 to obtain a Medicaid card for another individual ("Beneficiary #2"). The CW also gave WAHID copies of Beneficiary #2's social security account number, phone bill and date of birth. Because the CW did not have a passport or green card for Beneficiary #2, the CW paid WAHID an additional $100.00 (for a total of $500.00) to obtain the Medicaid card. WAHID informed the CW that Co-Conspirator #1 had been fired from his job, and was therefore no longer able to accept money in exchange for Medicaid cards. Although WAHID first denied the ability to obtain a Medicaid card for Beneficiary #2, he subsequently told the CW that he could create some hospital paperwork for Beneficiary #2, and then use that paperwork to apply for a Medicaid card. The CW did not provide any information about Beneficiary #2's eligibility for a Medicaid card.

13. On or about February 4, 2008, WAHID gave the CW a Queens Hospital Center card for Beneficiary #2. WAHID confirmed that he knew and dealt with employees at HRA who were responsible for producing Medicaid cards.

14. On or about February 13, 2008, the CW met with WAHID in Queens, New York and provided a copy of Beneficiary #2's green card and social security card. WAHID explained that he would mail a card to Beneficiary #2 to obtain proof of mailing.

15. On or about February 13, 2008, the CW explained to WAHID that Beneficiary #2 had a business and made "good money," but that Beneficiary #2 only had approximately $600.00 to $700.00 in the bank. Nevertheless, WAHID took the copies of Beneficiary #2's social security card and green card. WAHID explained that Beneficiary #2 could still obtain a Medicaid card even if he was wealthy as long as he had no money in the bank.

16. On or about March 14, 2008, the CW met WAHID and provided WAHID with hospital bills that were sent to Beneficiary #2 for services that Beneficiary #2 did not incur. WAHID told the CW that he was working with another individual at HRA ("Co-conspirator #2) because Co-conspirator #1 no longer worked there.

17. On or about June 28, 2008, a completed Medicaid application was submitted to HRA in the name of Beneficiary #2. This application included false information about Beneficiary #2's income, such as the fact that Beneficiary #2 was supported by a cousin who provided free room and food. The application was not completed or submitted by the CW, and none of the information therein was provided to WAHID by the CW. The application also included a "Declaration of No Income" form, on which Beneficiary #2's signature was forged. A signature of Beneficiary #2's fictitious cousin was also forged.

18. In or about September 2008, a Medicaid card in the name of Beneficiary #2 was mailed to an address in Queens, New York that was provided to WAHID by the CW.

WHEREFORE, your deponent respectfully requests that the defendant ABDUL WAHID, also known as "Maliem Hatakay," be dealt with according to law.

*L. M. Caulfield* (signature)
L. M. CAULFIELD
Special Agent
Federal Bureau of Investigation

Sworn to before me this
13th day of January, 2010